UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ASHLEY FELICIANO,

                        Plaintiff,      **6:16-cv-06311 (MAT)**

                                        **DECISION AND ORDER**

        -vs-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]

                        Defendant.

---

## I. Introduction

Plaintiff Ashley Feliciano("plaintiff") brings this action pursuant to Title II of the Social Security Act ("The Act"), seeking review of the final decision of the Commissioner of Social Security ("defendant" or "the Commissioner") denying her application for disability insurance benefits ("DIB"). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.

## II. Procedural History

Plaintiff protectively filed an application for DIB on November 23, 2011, alleging disability due to back and neck pain,

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

fibromyalgia, anxiety, degenerative disc disorder, and post-traumatic stress disorder ("PTSD"). Administrative Transcript ("T.") 137-54. Plaintiff's application was denied, and she requested a hearing before an administrative law judge ("ALJ"), which occurred on December 4, 2012, before ALJ William Manico. T. 34-64, 70-85. On December 26, 2012, ALJ Manico issued a decision in which he found plaintiff not disabled as defined in the Act. T. 8-29. The Appeals Council denied plaintiff's request for review. T. 1-7. Plaintiff commenced an action in this Court seeking review of ALJ Manico's decision, which was resolved when plaintiff and the Commissioner stipulated to remand the matter for further proceedings. T. 639-69.

On remand, a second hearing was held before ALJ Connor O'Brien on December 9, 2015. T. 596-635. ALJ O'Brien issued a decision on March 15, 2016 in which she found plaintiff not disabled as defined in the Act. T. 569-95. The Appeals Council did not assume jurisdiction within 60 days, rendering ALJ O'Brien's decision the final determination of the Commissioner. Plaintiff subsequently commenced the instant action.

**III. The ALJ's Decision**

Initially, the ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2016. T. 575. At step one of the five-step sequential evaluation, see 20 C.F.R. §§ 404.1520, 416.920, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 1, 2011, the

2

alleged onset date. *Id*. At step two, the ALJ found that plaintiff had the severe impairments of fibromyalgia, cervical and lumbar degenerative disc disease, carpal tunnel syndrome, obesity, heart murmur, interstitial cystitis, anxiety disorder, depression, and opioid and alcohol dependence. *Id*. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.*

Before proceeding to step four, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: can lift and/or carry a maximum of 10 pounds; can sit for six hours, stand for four hours, and walk for two hours; requires a sit/stand option that allows her to change position every hour for up to five minutes without leaving the workstation; can occasionally stoop, crouch, climb, kneel, crawl, and balance on narrow, slippery, or moving surfaces; can tolerate occasional exposure to extreme heat, extreme cold, wetness, humidity, and airborne irritants; can frequently, but not constantly, finger and handle; can perform simple work and occasionally make work-related decisions; can adjust to occasional changes in work setting; can occasionally interact with the public, but cannot perform teamwork; can work to meet daily goals, but cannot maintain an hourly, machine-drive, assembly line production rate; and requires up to three additional, short, less-than-five-minute unscheduled breaks beyond normal scheduled breaks. T. 576. At step four, the ALJ

3

found that plaintiff was unable to perform any past relevant work. T. 585. At step five, the ALJ concluded that, considering plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform. T. 586. Accordingly, the ALJ found that plaintiff was not disabled.

## IV. Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).

Here, plaintiff makes the following arguments in favor of her motion for judgment on the pleadings: 1) the ALJ violated the treating physician rule; and 2) the ALJ used the incorrect legal standard in assessing plaintiff's credibility. For the reasons discussed below, the Court finds these arguments without merit.

### A. The ALJ did not Violate the Treating Physician Rule

The treating physician rule requires an ALJ to give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may give less than controlling weight to a treating physician's opinion if it does not meet this standard, but must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion."). The ALJ is required to consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues" in determining how much weight to afford a treating physician's opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6). In this case, plaintiff alleges that the ALJ failed to properly apply the treating physician rule to the opinions of M. Elizabeth Michaels, M.D. ("Dr. Michaels"), and Donovan Holder, M.D. ("Dr. Holder").

### 1. The ALJ Properly Afforded Little Weight to Dr. Michaels' Opinion

Dr. Michaels, a psychiatrist, completed a medical source statement on December 19, 2012 in which she opined that plaintiff's abilities to abide by occupational rules/regulations and be aware of normal hazards and make necessary adjustments to avoid those hazards were good; her abilities to comprehend and carry out simple instructions, remember work instructions, respond appropriately to supervision, respond appropriate to co-workers, function independently on a job, exercise appropriate judgment, concentrate and attend to a task over an eight-hour period, make simple work-related decisions, maintain social functioning, and tolerate customary work pressures in a work setting including production requirements and demands were fair; and her abilities to remember detailed instructions and complete a normal workday on a sustained basis were poor. T. 565-67. Dr. Michaels further opined that plaintiff's condition was likely to deteriorate if she were placed under stress, that her condition was likely to produce good days and bad days, that she would likely be absent from work for more than four days per month due to her impairments, and that she was able to work for only two hours per day. T. 568

The ALJ gave little weight to Dr. Michaels' opinion, explaining that: (1) it was issued after Dr. Michaels had met with plaintiff only two times; (2) the form completed by Dr. Michaels provided for only four categories of functioning with overly broad

6

definitions; (3) Dr. Michaels merely checked off boxes and provided little narrative to explain how she had reached her conclusions; (4) Dr. Michaels offered no explanation for her opinion that plaintiff could work for only two hours per day and would be absent for more than four days per month, and plaintiff's treatment records do not support such a conclusion; and (5) plaintiff's activities "establish greater capacity than opined." T. 583.

Plaintiff contends that the ALJ erred in affording little weight to Dr. Michaels' opinion. In particular, plaintiff argues that (1) the ALJ should not have taken into account the fact that Dr. Michaels had seen her only twice; (2) the ALJ should not have credited the opinion of consultative examining psychologist Kevin Duffy, Psy.D. ("Dr. Duffy"), because Dr. Duffy met with plaintiff only once; (3) the ALJ should not have considered the use of a form less persuasive; and (4) the ALJ failed to cite the specific activities of plaintiff's that were inconsistent with Dr. Michaels' opinion. These arguments are without merit.

With respect to Dr. Michaels' limited interactions with plaintiff at the time she provided her opinion, the applicable regulations expressly instruct the ALJ to consider "[the] [l]ength of the treatment relationship and the frequency of examination" and the "[n]ature and extent of the treatment relationship" in determining how much weight to afford a treating physician's medical opinion. 20 C.F.R. §404.1527(c)(2)(i). It was therefore not error for the ALJ to note and take into consideration the fact

that Dr. Michaels had met with plaintiff only twice before rendering her opinion. Contrary to plaintiff's argument, the ALJ took into account the fact that Dr. Michaels had access to plaintiff's previous records from her treatment at Wayne Behavioral Health, discussing those records in detail and explaining that the treatment records did not support Dr. Michaels' assessment. T. 582-583. Accordingly, the ALJ did not err in taking into account the length and nature of Dr. Michaels' treating relationship with plaintiff in determining the weight to afford her opinion.

The ALJ also did not err in affording some weight to Dr. Duffy's opinion. "It is well settled that an ALJ is entitled to rely upon the opinions of consultative examiners, and such written reports can constitute substantial evidence." *Cichocki v. Astrue*, 2012 WL 3096428, at *6 (W.D.N.Y. July 30, 2012), *aff'd*, 729 F.3d 172 (2d Cir. 2013). By definition, a consultative examiner is not a treating physician and will see the claimant only on a discrete, limited basis. An ALJ is nonetheless permitted to consider the opinion of a consultative examiner in light of the record as a whole and give it an appropriate amount of weight. Here, the ALJ gave Dr. Duffy's opinion some weight because of its consistency with the record and because of Dr. Duffy's expertise. Plaintiff has cited no authority to support the proposition that this was improper.

With respect to the form used by Dr. Michaels, while it is true that the use of a form or questionnaire does not necessarily support rejecting a treating physician's opinion, the ALJ was clearly entitled to take into account the inherent flaws in the form itself. Specifically, the ALJ noted that the form in question went from "good," defined as "limited but satisfactory," to "fair", defined as "seriously limited and will result in periods of unsatisfactory performance at unpredictable times," neither of which fairly describes an individual with mild limitations. T. 583. The ALJ also properly took into account the fact that, despite being there being a space for a written comment on each question on the form, Dr. Michaels provided very little narrative or explanation for how she reached her opinion. *Id*. While these flaws in the form completed by Dr. Michaels did not relieve the ALJ of her obligation to consider the substance of the opinion, the ALJ was permitted to consider them as a factor in weighing Dr. Michaels' assessment. *See Hoffman v. Comm'r of Soc. Sec.*, 2014 WL 6610059, at *3 (N.D.N.Y. Nov. 20, 2014) (noting that "the better an explanation a source provides for an opinion, the more weight [the Commissioner] will give that opinion" and that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence") (internal quotations omitted).

Plaintiff's argument that the ALJ did not specifically discuss her activities of daily living is simply incorrect. The ALJ explained that plaintiff had "nearly normal activities of daily

9

living," including cooking daily, cleaning her house, and doing laundry, and that she was able to live with a roommate, travel to North Carolina, help her pregnant daughter, and assist her son with his homework. T. 580, 584-85. These activities are inconsistent with Dr. Michaels' assessment that plaintiff was capable of working for only two hours per day. An ALJ is permitted to take into account conflicts between a claimant's testimony and a treating physician's opinion. *See Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012) (ALJ properly declined to accord controlling weight to treating physician's opinion where it "conflicted with [the plaintiff's] own testimony that he could perform a reasonably broad range of light, non-stressful activities at or near his home, including driving, reading, sending email, and independently performing the activities of daily living while his wife worked full-time").

In sum, and for the reasons set forth above, plaintiff has not shown that the ALJ erred in affording little weight to Dr. Michaels' opinion. The Court therefore rejects plaintiff's argument that the ALJ violated the treating physician rule in assessing Dr. Michaels' medical source statement.

### 2. The ALJ Properly Afforded Some Weight to Dr. Holder's Opinion

Dr. Holder, a pain specialist, completed a medical source statement on December 6, 2012, and reaffirmed that statement in November 2015. T. 532-34. Dr. Holder opined that plaintiff could

10

occasionally climb, balance, stoop, crouch, kneel, crawl, climb stairs, reach, push, and pull. T. 533. He further opined that she could stand for a total of four hours during an eight hour day, walk for a total of one hour during an eight hour day, and sit for a total of six hours during an eight hour day. *Id*. According to Dr. Holder, plaintiff could lift and carry ten pounds at one time, and could lift and carry ten pounds for up to six hours per day. *Id*. Dr. Holder opined that plaintiff was required a sit/stand option, that she was likely to have good days and bad days, and that she would likely be absent from work about three days per month as a result of her impairments. *Id*. Dr. Holder indicated that plaintiff's symptoms would frequently be severe enough to interfere with the attention and concentration needed to perform even simple work tasks and plaintiff should not engage in prolonged standing or repetitive bending or twisting. T. 534.

In assessing plaintiff's RFC, the ALJ afforded some weight to Dr. Holder's opinion. Indeed, the ALJ's RFC finding incorporates many of the limitations set forth by Dr. Holder, including Dr. Holder's stated limitations on lifting, walking, sitting, standing, the necessity for a sit/stand option, and limitations in postural activities. *See* T. 580. To the extent she did not afford controlling weight to Dr. Holder's opinion, the ALJ explained that it was not fully consistent with the other evidence of record, including plaintiff's reported activities of daily living, the opinion of consultative examiner Dr. Elizama Montalvo, the opinion

11

of state agency source Dr. Mary Payne, and plaintiff's treatment records. T. 580. In particular, the ALJ noted that plaintiff's treatment records offered no support for Dr. Holder's opinion that she would need to be absent from work for three days per month. *Id.*

The ALJ properly afforded some weight to Dr. Holder's opinion. As the ALJ discussed, Dr. Holder's opinion was inconsistent, in some respects, with the medical evidence of record, which consistently showed that plaintiff had a full range of motion, full strength, and no abnormalities in her extremities. In particular, plaintiff's primary care physician, Dr. Eddy Laroche, consistently and over the course of many years assessed plaintiff with normal physical examinations. *See, e.g.,* T. 475, 478, 480, 952, 957, 960, 971, 975, 979, 983.

Plaintiff argues that the ALJ should not have considered Drs. Montalvo and Payne's opinions in determining that Dr. Holder's opinion was not entitled to controlling weight. However, "[c]onsultative physicians' opinions are a valid basis for rejecting a treating physician's opinion where they are part of other substantial evidence that is inconsistent with the treating physician's opinion." *Williams v. Colvin*, No. 14-CV-947S, 2017 WL 3404759, at *7 (W.D.N.Y. Aug. 9, 2017) (quotation omitted); *see also Diaz v. Shalala*, 59 F.3d 307, 313 n. 5 (2d Cir. 1995) ("the opinions of nonexamining sources[may] override treating sources' opinions provided they are supported by evidence in the record").

The ALJ was permitted to consider the opinions of Drs. Montalvo and Payne, in connection with the other evidence of record, in determining that Dr. Holder's opinion was not entitled to controlling weight.

Plaintiff's argument that the ALJ should not have considered her activities of daily living in assessing Dr. Holder's opinion fares no better here than it did with respect to Dr. Michaels' opinion. As discussed above, inconsistencies between a claimant's activities of daily living and a treating physician's opinion are a valid consideration for the ALJ.

The ALJ's decision to afford some weight to Dr. Holder's opinion was proper and based on the appropriate legal standard. The ALJ articulated good, appropriate reasons for the weight afforded, and no violation of the treating physician rule occurred.

**B.   The ALJ Properly Assessed Plaintiff's Credibility**

Plaintiff's final argument is that the ALJ failed to give good reasons for her assessment of plaintiff's credibility. The Court disagrees.

"It is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant. The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment ... [which he must do] in light of medical findings and other evidence regarding the true extent of the [symptoms] alleged by the claimant." *Acevedo v. Colvin*,

20 F. Supp. 3d 377, 390 (W.D.N.Y. 2014) (internal quotations and citations omitted).

In this case, the ALJ found plaintiff not credible because: (1) her self-reported activities of daily living were inconsistent with her claims; (2) she had significant lapses in treatment for both her physical and mental impairments; (3) she refused assistance in quitting smoking despite being told that she could not receive surgery unless and until she quit; (4) she has not been compliant in taking medications she claimed were helpful. T. 585. The Court finds no error in the ALJ's assessment of plaintiff's credibility.

"An ALJ is entitled to take a plaintiff's activities of daily living into account in making a credibility determination." *Pennock v. Comm'r of Soc. Sec.*, 2016 WL 1128126, at *5 (N.D.N.Y. Feb. 23, 2016), *report and recommendation adopted*, 2016 WL 1122065 (N.D.N.Y. Mar. 22, 2016). Contrary to plaintiff's argument, "[t]he issue is not whether [plaintiff's] limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted [plaintiff's] testimony regarding her symptoms to the extent that it is inconsistent with other evidence." *Morris v. Comm'r of Soc. Sec.*, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014). Here, plaintiff's claims about the nature and severity of her symptoms was plainly inconsistent with her ability to, for example, travel to North Carolina in order to assist her pregnant daughter and

14

subsequently help care her newborn grandchild. In particular, plaintiff's claims about her ability to sit for extended periods of time are plainly called into question by the fact that she rode in a car to North Carolina. Moreover, plaintiff's own physicians contradicted many of her claims about her limitations - for example, plaintiff testified that she could stand for only five to ten minutes before she would need to sit down (*see* T. 616), while Dr. Holder opined that she could stand continuously for four hours (T. 533). Similarly, plaintiff claimed she could sit for only ten minutes before she would have to stand (T. 619), while Dr. Holder opined that she could sit continuously for six hours (T. 533). The ALJ properly took this information into consideration when assessing plaintiff's credibility.

Regarding plaintiff's lapses in treatment, "[a]n ALJ can make an adverse credibility determination based on an applicant's failure to follow a treatment regimen if the applicant does not have a good reason for the lapse, but the ALJ first must ascertain the applicant's reason for noncompliance." *Mashaw v. Colvin*, 2014 WL 3956643, at *11 (N.D.N.Y. Aug. 13, 2014). Here, the ALJ asked plaintiff why she had stopped seeking treatment, and plaintiff claimed it was because she did not have a ride. T. 614, 624-25. However, and as the ALJ noted, plaintiff apparently never reported to any of her health care providers that she was having difficulty finding a ride to her appointments. Accordingly, the ALJ did not find that plaintiff had a good reason for the lapses in her

treatment, a determination which the Court finds was appropriate.

Turning to the issue of plaintiff's smoking, plaintiff argues that the ALJ should have taken into account the nature of nicotine addiction and the inherent difficulty of smoking cessation. However, the ALJ did not fault plaintiff for having continued to smoke, but for having actively refused help in quitting, including declining medication and failing to comply with a mental health referral, despite having been informed by her physicians that she needed to quit in order to obtain surgery. T. 585. While an ALJ may not base a credibility determination solely on a failure to quit smoking (see *Goff v. Astrue*, 993 F. Supp. 2d 114, 128 (N.D.N.Y. 2012), a refusal of treatment is an appropriate consideration (see *Valdez v. Colvin*, 232 F. Supp. 3d 543, 557 (S.D.N.Y. 2017); *cf. Monette v. Colvin,* 654 F. App'x 516, 519 (2d Cir. 2016) (ALJ did not err in discounting plaintiff's testimony based in part on his failure to stop smoking marijuana in order to permit more effective treatment of his impairments with other medication). Similarly, the ALJ did not err in considering plaintiff's failure to take her medications in assessing her credibility. *See, e.g., Nicholson v. Colvin*, 2015 WL 1643272, at *7 (N.D.N.Y. Apr. 13, 2015) ("The ALJ properly considered Plaintiff's failure to comply with medication treatment as prescribed as a factor weighing against her credibility, particularly because she had continued counsel from her treatment providers to maintain the medication regimen.").

For the foregoing reasons, the Court finds that the ALJ properly assessed plaintiff's credibility and provided good reasons for her assessment. Accordingly, the Court will not disturb the Commissioner's determination.

**V. Conclusion**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Doc. 9) is denied and the Commissioner's motion (Doc. 14) is granted. Accordingly, the complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                         **S/Michael A. Telesca**

                                   HON. MICHAEL A. TELESCA
                                   United States District Judge

Dated:    August 17, 2017
            Rochester, New York.